FILED
United States Court of Appeals
Tenth Circuit

**March 3, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 07-8038

EMERY GARRET TINDALL,

Defendant-Appellant.

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING
### (D.C. NO. 06-CR-303-WFD)

Daniel G. Blythe, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Cheyenne, Wyoming, for Defendant-Appellant.

Gregory A. Phillips, Assistant United States Attorney (John R. Green, Acting United States Attorney, and Jason M. Conder, Assistant United States Attorney, with him on the brief), Office of the United States Attorney, Lander, Wyoming, for the Plaintiff-Appelle.

Before **MURPHY**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Emery Garret Tindall pleaded guilty to assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153. The district court enhanced Tindall's sentence after concluding the injuries could have resulted in the loss of the victim's life. On appeal, he argues the district court improperly relied on the Presentence Report (PSR) in making fact findings about the seriousness of the victim's injuries. As a result, Tindall claims the district court lacked sufficient evidence to support a seven-level enhancement and then applied the enhancement inconsistently from other courts in our circuit.

Finding no error in the district court's sentence, we AFFIRM.

## I. Background

Following Tindall's plea of guilty to assault resulting in serious bodily injury, the government prepared a PSR, which related the following:

Beginning in late afternoon on July 31, 2006, Tindall and his mother were drinking with friends, including James WhiteAntelope, and a few others. Around midnight, the group drove to WhiteAntelope's parents' home on an Indian reservation in Wyoming to drop off WhiteAntelope. Arriving at his parents' home, WhiteAntelope got out of the car and grabbed Tindall's mother by her arm. Tindall uttered an expletive and asked what WhiteAntelope was doing, to which WhiteAntelope responded with a profanity. Tindall then got out of the car, swung at WhiteAntelope's head with his fist, missed, and started chasing him to the house. Having caught up to WhiteAntelope, Tindall hit him in the back of the

-2-

head.  WhiteAntelope fell face first onto the steps leading up to his parents'

house, and Tindall jumped on top, hitting WhiteAntelope at least three more times

in the head.  Tindall then got back into the car, and the group drove off.

Noticing WhiteAntelope's heavy bleeding, his family took him to the

emergency room.  The treating doctor "stated the arterial laceration to the back of

Mr. WhiteAntelope's head posed a substantial risk of death at the time of the

injury because [of] the amount of blood loss," R., Vol. 5 at 4, which the doctor

quantified as "half his blood," *id.* at 6.  Although immediate medical attention

mitigated the danger to WhiteAntelope, the doctor did state, "if unchecked[,

WhiteAntelope] would have bled to death."  *Id.* at 4.

The PSR calculated a base offense level of 14 and a seven-level

enhancement for causing life-threatening injury.  After a downward adjustment

for acceptance of responsibility, the PSR arrived at a total offense level of 18.

Tindall, with no prior convictions, had a criminal history score of zero.  A

criminal history score of zero (category I) and a total offense level of 18 yielded

an imprisonment range of 27–33 months under the United States Sentencing

Guidelines (USSG).  Under the applicable statute, 18 U.S.C. § 113(a)(6), the

maximum term of imprisonment for Tindall's offense is 10 years.

Tindall objected to a seven-level enhancement, arguing a five-level

enhancement for causing serious bodily injury would be more appropriate because

(1) Tindall did not plead to conduct involving a life-threatening injury, and (2)

-3-

Tindall did not use a weapon and did not intend to cause a life-threatening injury. The government, while agreeing with the PSR's recommended seven-level enhancement, stated it would not object to a lesser enhancement of five levels.

The district court, relying on the doctor's assessment of the injury, overruled Tindall's objection and sentenced him to 31 months incarceration, in the middle of the advisory guidelines range.

## II. Discussion

Tindall raises three arguments that, in his view, require a remand to the district court for resentencing: (1) the district court failed to comply with Federal Rule of Criminal Procedure 32 in adopting the PSR's life-threatening injury recommendation, (2) the PSR did not contain sufficient evidence to support the conclusion that WhiteAntelope had suffered a life-threatening injury, and (3) the district courts in our circuit are inconsistent in their applications of the life-threatening injury enhancement. Tindall argues these three errors led to the district court's application of the seven-level enhancement.

We disagree with each argument.

### A. Interplay Between 18 U.S.C. § 113(a)(6) and the Guidelines

Before turning to Tindall's arguments on appeal, it is useful to review the relevant provisions of the statute under which Tindall pleaded guilty as well as applicable Guidelines sections. We do this because the main thrust of Tindall's arguments betrays a misunderstanding of the district court's task at sentencing.

Tindall's arguments rely heavily on the statutory language of the offense of conviction. But the district court looks not only to the offense of conviction at sentencing. Rather, it also looks to the Guidelines to determine the appropriate advisory sentencing range. As the government correctly pointed out during sentencing, Tindall's "confusion comes from the use of the term 'serious bodily injury' in both the statute under which Mr. Tindall pled guilty as well as the use of the term in the . . . sentencing guidelines." R., Vol. 3 at 8.

*Statutory Language.* Under 18 U.S.C. § 113(a)(6),[1] Tindall pleaded to a charge of "[a]ssault resulting in serious bodily injury." To define the term "serious bodily injury," § 113(b)(2) cross-references 18 U.S.C. § 1365, which defines this term as bodily injury involving "(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *Id.* § 1365(h)(3). Focusing on subsections A and B, either a substantial risk of death or extreme physical pain suffices to establish a violation of § 113(a)(6).

---

[1] Tindall was also indicted under 18 U.S.C. § 1153, which applies to "[o]ffenses committed within Indian Country" and places such offenses within the exclusive jurisdiction of the federal government. *Id.* § 1153(a) ("Any Indian who commits against the person . . . of another Indian or other person any of the following offenses, namely, . . . assault resulting in serious bodily injury . . . within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.").

Tindall pleaded guilty to assaulting WhiteAntelope and causing him serious bodily injury, *as the term is used in the statute*. The plea agreement did not specify whether Tindall's assault resulted in a substantial risk of death or extreme physical pain. But under the plea agreement, Tindall "ha[d] been advised of § 1B1.3 of the Sentencing Guidelines regarding use of relevant conduct in establishing [his] sentence." R., Vol. 2, Doc. 17 at 5. We thus look to the Guidelines to determine how Tindall's conduct affects his sentence.

*Sentencing Guidelines.* Assault under 18 U.S.C. § 113(a)(6) triggers the application of USSG § 2A2.2, which establishes a base offense level of 14 and allows various enhancements. Two possible enhancements are relevant to this appeal. A five-level enhancement applies if the victim sustained "Serious Bodily Injury." *Id.* § 2A2.2(b)(3)(B). But if the victim suffered "Permanent or Life-Threatening Bodily Injury," a seven-level enhancement applies. *Id.* § 2A2.2(b)(3)(C).

Under the Guidelines, "'Serious bodily injury' means injury involving *extreme physical pain* or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* § 1B1.1 cmt. n.1(L) (emphasis added). "'Permanent or life-threatening bodily injury' means injury involving *a substantial risk of death*; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be

permanent; or an obvious disfigurement that is likely to be permanent." *Id.* at n.1(J) (emphasis added).

Under the Guidelines, then, Tindall's offense—assault resulting in serious bodily injury—calls for different sentencing calculations depending on the type of harm WhiteAntelope suffered. In other words, although 18 U.S.C. § 113(a)(6) lumps both a substantial risk of death and extreme physical pain into the "serious bodily injury" category, the Guidelines call for different enhancements based on the nature of the injury. That Tindall pleaded to "serious bodily injury" under the statute does not mean he should automatically receive only a five-level enhancement under the Guidelines. Both a five- and a seven-level enhancement are consistent with a plea to assault resulting in serious bodily injury under § 113(a)(6), depending on the nature of the victim's injuries.

## B. Arguments on Appeal

With this understanding of the Guidelines in mind, we turn to Tindall's three arguments for remand.

### 1. Necessity of Rule 32 Findings

Tindall's first argument challenges the district court's compliance with Rule 32 requirements. *See* Fed. R. Crim. P. 32. Rule 32(i)(3)(A) allows the sentencing court to "accept any undisputed portion of the presentence report as a finding of fact." But the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling

is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." *Id.* 32(i)(3)(B). "We review *de novo* the district court's compliance with the Federal Rules of Criminal Procedure." *United States v. Cereceres-Zavala*, 499 F.3d 1211, 1214 (10th Cir. 2007) (citing *United States v. Kravchuk*, 335 F.3d 1147, 1160 (10th Cir. 2003)).

We recently stated "unequivocally that . . . 'to invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make specific allegations of factual inaccuracy.'" *Id.* at 1215–16 (quoting *United States v. Rodriguez-Delma*, 456 F.3d 1246, 1253 (10th Cir. 2006)). This means "a defendant's attempt to controvert legal determinations—or even ultimate factual conclusions—drawn in a PSR 'does not implicate' the district court's fact-finding obligations under Rule 32." *Id.* at 1214 (quoting *United States v. Tovar*, 27 F.3d 497, 500 (10th Cir. 1994)). "Arguments that challenge the district court's application of the guidelines to the facts and not the facts themselves do not trigger any obligation on the part of the district court to make specific findings." *Id.* (quotation and alteration omitted).

Our review of Tindall's written objections filed before sentencing and of the sentencing transcript convinces us Tindall failed to make a specific allegation of factual inaccuracy that would trigger the district court's Rule 32 obligations. Tindall made three objections to the recommended enhancement: (1) the emergency room doctor exaggerated when he said WhiteAntelope had lost "half

-8-

his blood," (2) Tindall did not admit or plead guilty to conduct involving a life-threatening injury, and (3) Tindall did not use a weapon and did not intend to cause a life-threatening injury. The last two objections challenge the district court's application of the Guidelines and, as such, do not require a Rule 32 ruling.

Tindall's only factual objection addressed the "half his blood" statement. The district court did not, however, rely on the doctor's alleged exaggeration in concluding WhiteAntelope had suffered a life-threatening injury. Instead, the court relied on the doctor's statement that "had . . . the bleeding not been stopped, the victim would have died. That meets the definition of a 'life-threatening injury.'" R., Vol. 3 at 13. The district court continued, "Counsel may quibble with the doctor's estimate of half his blood was lost to this wound, but there's no quibbling with the doctor's opinion that had the blood—the bleeding not been stopped, the victim would have died." *Id.* Under Rule 32(i)(3)(A), the district court was well within its discretion to accept an undisputed portion of the PSR that noted the doctor's opinion of a substantial risk of death.

The district court, moreover, gave Tindall several opportunities to specifically object to the doctor's opinion regarding the risk of death. The court asked, "you take exception to the language that . . . the victim had lost, quote, half his blood, close quote; but do you take exception to the findings of the treating physician that death could have resulted had the bleeding not been stopped?" *Id.* at 4. Instead of specifically disputing the accuracy of the doctor's

-9-

opinion, Tindall's counsel said, "I think . . . that is close, I suppose, to a substantial risk of death which is the definition of 'serious bodily injury' for which he was charged. . . . [I]t wasn't charged as 'life-threatening.'" *Id.* Thus, not only did Tindall fail to specifically object, but he once again conflated the "serious bodily injury" term in the statute with the Guidelines.

Later in the proceedings, Tindall was given another opportunity to object. The district court observed, "By divine providence [Tindall] isn't here charged with murder." *Id.* at 7. Tindall's counsel responded, "I don't know that that was . . . life-threatening. I think it was—but you're right. A substantial risk of death is serious bodily injury, and I suppose losing that much blood is a substantial risk of . . . death, and indeed by providence he's not, and I think he knows that." *Id.* Here again, a substantial risk of death, while termed "serious bodily injury" under the statute, represents a life-threatening injury under the Guidelines, warranting a seven-level enhancement. But in addition, this exchange illustrates counsel acknowledging Tindall's attack caused a substantial risk of death. Instead of a specific allegation of factual inaccuracy, we have an undisputed statement in the PSR.

As a result, because Tindall's objections challenged only the district court's application of the Guidelines to an undisputed portion of the PSR (the doctor's opinion that a substantial risk of death existed), the district court did not run afoul of the Rule 32 requirements.

-10-

### 2. *Sufficiency of the Evidence*

Tindall's next argument challenges the procedural reasonableness of his sentence. He claims the district court did not have enough evidence to conclude WhiteAntelope had suffered a life-threatening injury. *See, e.g.*, *United States v. Hernandez*, 509 F.3d 1290, 1298 (10th Cir. 2007) (analyzing sufficiency of the evidence challenge as a question of procedural reasonableness). As the Supreme Court has directed us in reviewing challenges to procedural reasonableness, we must ensure

> the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, *selecting a sentence based on clearly erroneous facts*, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 128 S. Ct. 586, 597 (2007) (emphasis added). We defer to the district court's application of the Guidelines to the facts "under an abuse-of-discretion standard." *Id.*

"[T]he abuse of discretion standard consists of component parts, affording greater deference to findings of fact (clearly erroneous) than to conclusions of law (erroneous)." *United States v. McComb*, No. 07-5003, 2007 WL 4393142, at *3 n.4 (10th Cir. Dec. 18, 2007). We have previously explained the government must prove by a preponderance of the evidence "any findings necessary to support a sentence enhancement." *United States v. Albers*, 93 F.3d 1469, 1487 (10th Cir.

-11-

1996); *see also United States v. Campbell*, 372 F.3d 1179, 1183 (10th Cir. 2004)

("Under well-established Tenth Circuit precedent, the government has the burden

of proving sentence enhancements . . . ." (quotation omitted)).[2]

Normally, we would review Tindall's challenge to the district court's

factual findings for clear error. In this case, however, Tindall failed to raise the

sufficiency of the evidence argument at sentencing, triggering our plain error

review. *See United States v. Traxler*, 477 F.3d 1243, 1250 (10th Cir. 2007).

"Plain error occurs when there is (i) error, (ii) that is plain, which (iii) affects the

defendant's substantial rights, and which (iv) seriously affects the fairness,

integrity, or public reputation of judicial proceedings." *United States v. Ruiz-*

---

[2] Tindall argues the district court should have applied the beyond a reasonable doubt standard to facts necessary to support a seven-level enhancement for causing a life-threatening injury. The argument is without merit. We have repeatedly explained, "[b]ecause the post-*Booker* Guidelines are discretionary, a district court may continue to find [sentencing] facts . . . by a preponderance of the evidence." *United States v. Hall*, 473 F.3d 1295, 1312 (10th Cir. 2007) (citing *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1130–31 (10th Cir. 2006)). The Supreme Court's recent decision in *Cunningham v. California*, 127 S. Ct. 856 (2007), on which Tindall relies, does not change our post-*Booker* jurisprudence. *See United States v. Trujillo*, 247 F. App'x 139, 144 (10th Cir. 2007) ("*Cunningham* does nothing more than reaffirm the holding of *Booker* as it relates to a mandatory sentencing scheme. It does nothing to undermine this court's post-*Booker* jurisprudence or to preclude a sentencing court from engaging in judicial factfinding under the now-advisory Guidelines."). Tindall seeks to make *Cunningham* applicable by arguing that to conclude he caused a life-threatening injury would require going beyond his plea, which only addressed serious bodily injury under 18 U.S.C. § 113(a)(6). The argument yet again misunderstands the interplay between the charged statute and the Guidelines.

-12-

*Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007). Because the district court committed no error, we need not go beyond the first prong.

To conclude WhiteAntelope had suffered a life-threatening injury, the district court relied on the following undisputed statement by the emergency room doctor: "the arterial laceration to the back of Mr. WhiteAntelope's head posed a substantial risk of death at the time of injury because [of] the amount of blood loss." R., Vol. 5 at 4. Under the Guidelines, a substantial risk of death constitutes life-threatening injury. USSG § 1B1.1 cmt. n.1(J). An undisputed statement by the treating doctor, in the absence of contrary evidence, can—and in this case does—amount to a preponderance of the evidence. *Cf., e.g.*, *United States v. Smith*, 833 F.2d 213, 218 (10th Cir. 1987) (concluding "the undisputed facts of the present case would be sufficient, without more, to prove by a preponderance of the evidence that Smith conspired with Grace to unlawfully possess the computers").

Tindall argues the doctor's statement is insufficient for three reasons. First, he points out the risk of death "was mitigated once WhiteAntelope arrived at the hospital because the doctors were able to control" the bleeding. R., Vol. 5 at 4. On Tindall's reading of the Guidelines, a timely-treated injury cannot be life-threatening. But the very term "life-threatening" belies this argument. When we say "life-threatening," we do not mean "actually resulting in loss of life." Rather, the term "threaten" denotes only "the probable visitation of some evil or

affliction."  *Webster's Third New International Dictionary* 2382 (2002).  That the injury is ultimately cured does not answer whether the injury was "life-threatening" when inflicted.

Second, Tindall argues the doctor's statement is insufficient because the doctor himself did not label the injury "life-threatening."  But the labeling is the job of the district court, not the doctor.  The district court, presented with facts, determines whether facts support a legal conclusion under the Guidelines.  In this case, the doctor's statement ("a substantial risk of death") supported the district court's legal conclusion that a seven-level enhancement for causing a life-threatening injury should apply.

Finally, Tindall contends the finding of "a substantial risk of death" amounts only to "serious bodily injury" as the term is defined in 18 U.S.C. § 113(a)(6).  In this argument, Tindall yet again conflates the charged statute and the Guidelines.  What amounts to "serious bodily injury" under the statute can warrant either a five- or seven-level enhancement.  In Tindall's case, the preponderance of the evidence supported the district court's application of a seven-level enhancement for assault resulting in a life-threatening injury.

In sum, the district court committed no error, plain or otherwise, in concluding the facts in the record established by a preponderance of the evidence that WhiteAntelope had suffered a life-threatening injury, warranting a seven-level sentencing enhancement.

### 3.  Sentence Disparity

Tindall's final argument points to the alleged inconsistencies in how district courts in our circuit have applied five-level (serious bodily injury) and seven-level (life-threatening bodily injury) enhancements.  As an initial matter, Tindall failed to raise this argument in the district court, which requires that we review it only for plain error.  Moreover, it is not clear from the briefs whether Tindall contends his sentence is procedurally or substantively unreasonable because of the alleged inconsistencies with other sentencing decisions.  Whatever the approach, Tindall's argument fails either as a procedural or substantive challenge.

*Procedural Reasonableness.*  In sentencing, the district court has a duty under 18 U.S.C. § 3553(c) to show it has considered the sentencing factors set forth in § 3553(a), one of which is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6).  *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.").  But the Court also made clear that a district judge is not required to give an exhaustive list of reasons.  *Id.* ("The law leaves much, in this respect, to the judge's own professional judgment.").

-15-

In sentencing Tindall within the advisory guidelines range, the district court explained, "the sentence I am about to impose is the most reasonable sentence upon consideration of all factors enumerated in 18 United States Code 3553." R., Vol. 3 at 25. A one-sentence explanation accompanying a within-guidelines sentence—in the absence of the need to address specific § 3553(a) arguments brought to the district court's attention—satisfies the district court's duty to impose a procedurally reasonable sentence. *Ruiz-Terrazas*, 477 F.3d at 1199 (holding "Section 3553(c) requires the court to provide only a general statement" in explaining the imposition of a sentence falling within the Guidelines); *see also Cereceres-Zavala*, 499 F.3d at 1217 (finding "the Supreme Court's latest pronouncement in *Rita v. United States* on the requirements of § 3553(c) in accordance" with *Ruiz-Terrazas*).

Thus, the district court committed no procedural error in explaining Tindall's sentence.

*Substantive Reasonableness.* We review the district court's sentence for substantive reasonableness in light of the § 3553(a) sentencing factors. *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). The district court has significant discretion in sentencing, and our review for reasonableness, regardless of whether the sentence falls inside or outside the advisory Guidelines, is a review for abuse of discretion. *Gall*, 128 S. Ct. at 597; *Rita*, 127 S. Ct. at 2456.

-16-

In this case, the district court sentenced Tindall within the guidelines range and we have already concluded the court did not err in calculating the range itself. The binding precedent in our court is that "a sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." *Kristl*, 437 F.3d at 1054; *see also Gall*, 128 S. Ct. at 597 (explaining that the presumption is permissible but not required); *Rita*, 127 S. Ct. at 2456 (same). Nevertheless, the presumption of reasonableness "is a deferential standard that either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." *Kristl*, 437 F.3d at 1054.

Tindall cannot overcome the presumptive reasonableness of his sentence merely by pointing out that some alleged inconsistencies exist in how defendants are sentenced in our circuit. Section 3553(a)(6) specifically speaks in terms of "the need to avoid *unwarranted sentence disparities* among *defendants with similar records* who have been found guilty of similar conduct." *Id.* (emphasis added). And we have held that § 3553(a)(6) "requires a judge to take into account only disparities *nationwide* among defendants with similar records and Guideline[s] calculations." *United States v. Verdin-Garcia*, No. 06-3354, 2008 WL 435495, at *12 (10th Cir. Feb. 19, 2008). Tindall failed to explain how his circumstances—criminal history as well as conduct—are similar to those with

-17-

which he seeks to draw a comparison. We thus cannot meaningfully decide whether the alleged disparities are truly unwarranted, as § 3553(a)(6) requires.

Moreover, considering just one case relied on by Tindall illustrates his attempt to compare the incomparable. In *United States v. Alexander*, 447 F.3d 1290 (10th Cir. 2006), we found sufficient evidence of serious bodily injury to support a conviction where the victim arrived at the hospital in serious condition, experienced severe pain, lost substantial amount of blood, suffered multiple severe lacerations, experienced dizziness, and required further hospital stay to monitor possible brain swelling. *Id.* at 1299–300. Tindall argues the finding of serious bodily injury in *Alexander* is inconsistent with the finding of a life-threatening injury in his case.

In the first place, we do not know whether the facts in *Alexander* also indicated a substantial risk of death existed. The doctor's undisputed statement in this case, however, discloses precisely that, making the circumstances in the two cases hardly comparable. But most importantly, *Alexander* did not involve an application of the Guidelines, only the statutory term "serious bodily injury" under 18 U.S.C. § 113(a)(6). *See id.* As we have already explained, the statutory term is fully consistent with either a five-level (serious bodily injury) or seven-level (life-threatening bodily injury) enhancement under the Guidelines.[3]

----

[3] The other cases cited by Tindall are similarly unhelpful. The examples do not show whether the government sought or the district court considered the

(continued...)

We accordingly perceive no error, plain or otherwise, that would allow us to conclude the district court imposed a substantively unreasonable sentence.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Tindall's sentence.

---

[3](...continued)
life-threatening enhancement at issue here.