**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ISAAC SERRANO,

Defendant-Appellant.

No. 09-4057

(D. Utah)

(D.C. No. 1:08-CR-37-DB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **MURPHY** and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This appeal centers on the district court's four-level upward adjustment of Mr. Serrano's base offense level because he possessed firearms "in connection with" another felony case. *See* USSG § 2K2.1(b)(6). Mr. Serrano contends that

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

hunting rifles and a non-functioning handgun were not the types of firearms typically associated with drug trafficking to warrant the upward adjustment. Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we reject Mr. Serrano's contention and affirm the district court.

## I. BACKGROUND

In March of 2008, the Weber Morgan Narcotics Strike Force initiated an investigation into a drug distribution operation in Ogden, Utah. On March 11, 2008, a confidential informant ("the informant") contacted Mr. Serrano, who agreed to sell cocaine to an undercover agent. Mr. Serrano had another person deliver cocaine to the agent.

On March 14, 2008, the informant contacted Mr. Serrano, who agreed to sell more drugs to the undercover agent. Mr. Serrano's daughter delivered cocaine to the undercover agent while Mr. Serrano remained in the passenger seat of a vehicle.

On March 24, 2008, the informant contacted Mr. Serrano, who agreed to make another drug sale to the undercover agent. Mr. Serrano's daughter delivered two OxyContin (a scheduled narcotic) pills and a baggie of marijuana to the undercover agent while Mr. Serrano sat in the passenger seat of a vehicle.

On March 27, 2008, the strike force executed a search warrant at Mr. Serrano's home in Ogden, Utah. The officers found the following evidence:

In the living room:

- a black digital scale

- a box of .22 caliber bullets in a drawer

- plastic baggies

- a white powdery substance with a spoon on a plate

In the southeast bedroom:

- $1,050 in U.S. currency

- a Remington .270 rifle

- a pill bottle with a white powdery residue with the name Isaac

Serrano on it

- a Browning 16-gauge shotgun

- numerous pill bottles with the name Isaac Serrano on them

- a box of Remington .270 bullets

- two pill bottles with the names Teressa Garcia and Teressa Errano on

them

- a box of .357 Winchester bullets

- a box of American Eagle 9 mm bullets

- a box of .45 caliber bullets

In the northeast bedroom:

- a Jennings .22 caliber rifle

- a loaded gun clip

- a box of .357 magnum bullets

- a box of .22 caliber bullets

In the northwest bedroom:

- a Remington 870 20-gauge shotgun

- plastic baggies

- a small spoon

In the middle east bedroom closet:

- a box of shotgun shells

Vol. III, ¶ 8.

Mr. Serrano pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), after the government agreed to dismiss four counts of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a). The presentence report recommended a four-level increase in Mr. Serrano's offense level for possessing guns in connection with another felony offense, pursuant to USSG § 2K2.1(b)(6). Mr. Serrano objected to this increase, arguing there was insufficient evidence to support it.

The government presented testimony at the sentencing hearing regarding Mr. Serrano's drug transactions. Amy MacFarland also testified that, during a 2006 OxyContin purchase, Mr. Serrano was on his bed with a semi-automatic handgun next to him. She testified that she thought she should not "mess with him" or "pull any tricks" because of the presence of the gun. Rec. vol. II, at 8-9.

Ms. MacFarland further testified that, just days before the search, when she owed Mr. Serrano money, he had threatened her with a "hit" if she did not satisfy her drug debt. She testified that he held a semi-automatic handgun to her ribs, told her not to "mess with him" and that he would (and did) take the title to her car if she did not pay him. *Id.* at 10-11, 39-41. An agent for whom Ms. MacFarland worked as a confidential informant also testified that Ms. MacFarland had told him about Mr. Serrano's holding a gun to her ribs and taking the title to her car.

After hearing testimony regarding Ms. MacFarland's history of prior convictions for thefts and crimes of dishonesty, the district court found Ms. MacFarland's testimony regarding her interactions with Mr. Serrano "to be credible." *Id.* at 72. Considering all of the evidence put before it, the court concluded that Mr. Serrano "was a regular drug user . . . and that he had guns, and those guns were used in connection with that other felony offense, drug sales." *Id.* at 73.

The district court found that Mr. Serrano possessed firearms in connection with his regular felony drug distribution and increased his offense level by four points under § 2K2.1(b)(6). The district court specifically found:

> by a preponderance of the evidence that these weapons that were found in the house have the potential of facilitating another felony offense, and that is drug trafficking. When I put all the facts together here, a picture gets painted and it shows the defendant was regularly involved in the distribution of drugs.

*Id.* at 72.

The district court concluded that Mr. Serrano's offense level was 17 (taking into account a three-level reduction for acceptance of responsibility) and his criminal history category was III, resulting in an advisory sentencing range of 30-37 months. The court sentenced Mr. Serrano to 36 months' imprisonment, to be followed by 36 months' supervised release.

## II. DISCUSSION

Mr. Serrano argues that the government failed to show that there was a close nexus–a legal connection–between the weapons and the evidence of drug distribution. Without the four-level increase under § 2K2.1(b)(6), Mr. Serrano's offense level would be 13 and his advisory Guideline range would be 20-24 months. He therefore urges us to remand this case for resentencing.

### A. Standard of Review

Mr. Serrano's argument challenges the procedural reasonableness of his sentence. A sentence is procedurally unreasonable if a district court improperly calculates the applicable Guidelines range. *Gall v. United States*, 522 U.S. 381, 51 (2007); *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 2829 (2009). We review a district court's legal conclusions regarding the Guidelines de novo and its factual findings for clear error. *United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008). The government has the

burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement. *United States v. Tindall*, 519 F.3d 1057, 1063 (10th Cir. 2008).

## B. Mr. Serrano's arguments

Under § 2K2.1(b)(6), a defendant's offense level is increased by four if "the defendant used or possessed any firearm or ammunition in connection with another felony offense." Application Note 14 to § 2K2.1 explains that the phrase "in connection with" applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." *See United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998) ("[W]e have generally held that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under § 2K2.1(b)[(6)] is appropriate."). As to handguns specifically, because they are widely recognized tools of the drug trade, "a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)[(6)]." *Id.*

Here, Mr. Serrano does not deny that he was engaging in another felony offense with his armory of shells, bullets, hunting rifles and a virtually inoperable handgun in other sections of the house. Instead, he argues that the government did not prove by a preponderance of the evidence that he possessed the firearms *in connection* with another offense, that is the sale of controlled substances.

Mr. Serrano notes that the weapons' "diminutive size and poor functioning condition" suggested little utility as a tool for either intimidating customers or protecting himself. Apt's Br. at 10. He points out that rifles are more typically associated with hunting. And, Mr. Serrano argues that although Ms. MacFarland testified about a semi-automatic weapon, the officers found no such weapon. As to the handgun, Mr. Serrano notes that it "fell apart" when his expert picked it up, indicating that it would serve as a poor weapon with which to intimidate a customer or rival. Rec. vol. I, doc. 23 (Position of Defendant with Respect to Sentencing Factors, Ex. B, at 2). Additionally, the government's expert testified that one could only fire the gun by holding the cylinder manually in place.

Our precedents do not allow us to be persuaded by Mr. Serrano's arguments. While we recognize that the handgun was nearly inoperable, we conclude that the district court did not clearly err in determining it had the *potential* of facilitating a drug offense. The district court found Ms. MacFarland's testimony credible and concluded that Mr. Serrano's completing drug transactions with a firearm present was more than "coincidental." Aplt's Br. at 8. Moreover, sufficient evidence exists to support the district court's conclusion that Mr. Serrano had access to all areas of the house. Accordingly, the court reasonably concluded a sufficient nexus exists between the rifle and the drugs to justify the enhancement. *See United States v. Gambino-Zavala* 539 F.3d 1221, 1230 (10th Cir. 2008) (affirming § 2K2.1(b)(6) enhancement when a

shotgun and ammunition were found in a closet of a joint occupant's apartment because "the shotgun had the potential to facilitate illegal drug transactions by helping [the defendant] protect himself and his drug supply."). It simply does not matter if these are not the usual firearms used in Ogden drug deals. The district court therefore did not err in applying the § 2K2.1(b)(6) enhancement.

## III. CONCLUSION

Because the district court did not err in relying on § 2K2.1(b)(6) to enhance Mr. Serrano's sentence, we AFFIRM his sentence.

Entered for the Court,


Robert H. Henry
Circuit Judge