**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 18, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRIAN A. RICHARDS,

    Defendant - Appellant.

No. 25-3028
(D.C. No. 6:23-CR-10025-EFM-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

Brian A. Richards is the defendant in an ongoing federal prosecution for bank-robbery. He appeals the district court's order authorizing forced administration of antipsychotic drugs to restore his competency to stand trial.[1] We affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We have jurisdiction to hear this appeal under 28 U.S.C. § 1291 through the collateral-order doctrine. _See Sell v. United States_, 539 U.S. 166, 176–77 (2003).

I

Individuals have "a constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs—an interest that only an essential or overriding state interest might overcome." *Sell v. United States*, 539 U.S. 166, 178–79 (2003) (internal quotation marks omitted). And so courts may allow the government to force antipsychotic drugs on an individual to restore competency for trial only if (1) important governmental interests are at stake, (2) forced medication will significantly further those interests, (3) forced medication is necessary to further those interests, and (4) administration of the drugs is medically appropriate. *See id.* at 180–81.

II

The parties agree about the general allegations supporting the bank-robbery charge. Mr. Richards passed a note to a bank teller claiming to have a gun and demanding $227.64. After obtaining the requested money, he left the bank and went to a nearby restaurant. When police arrived, he admitted to robbing the bank. Police found the demand note and cash in his pockets but no gun.

Several months into the prosecution, a forensic psychologist opined that Mr. Richards was incompetent to stand trial. The district court ordered that he undergo competency-restoration treatment.

During the restoration efforts, a Bureau of Prisons psychologist concluded that antipsychotic drugs offered a substantial probability of restoring Mr. Richards's competency to stand trial. But Mr. Richards refused to take the drugs.

2

The district court held a hearing to determine whether to authorize forced medication. A psychiatrist and Mr. Richards testified. Mr. Richards's testimony focused on two concepts, "voice-to-skull" and "gang stalking." R. vol. 3 at 44. Voice-to-skull, he explained, "is like telepathy," conveying "a thought process to another person using some kind of equipment." *Id.* at 48. And gang stalking appears to refer to conspiracies to have individuals committed or sent to prison. *Id.* at 44. His belief that voice-to-skull and gang stalking are "real" formed the basis of his objection to taking antipsychotic drugs. *Id.* at 52–53. The reasoning behind his objection, as we understand it, goes like this: voice-to-skull and gang stalking are real, voluntarily taking antipsychotic drugs would amount to an acknowledgement that they are not real, and such an acknowledgement would be "deceitful to God." *Id.* at 53. But if a judge ordered him to take the drugs, Mr. Richards added, then taking them would not be "deceitful to God." *Id.* And he had no "religious objections to medication" itself. *Id.* at 44.

The district court authorized the government to administer antipsychotic drugs to Mr. Richards against his will. The court stayed its ruling to allow this appeal.

### III

On appeal Mr. Richards challenges only the district court's resolution of the first *Sell* requirement—that important governmental interests are at stake. *See* 539 U.S. at 180. Whether an asserted governmental interest is important is a legal question we review de novo. *See United States v. Bradley*, 417 F.3d 1107, 1113–14 (10th Cir. 2005).

3

"The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property." *Sell*, 539 U.S. at 180.

Mr. Richards never disputes that bank robbery will typically be a serious crime. But the allegations against him do not reflect a typical bank robbery, he says, because he never used violence, he had no gun, and, after the robbery, he went to a restaurant across the street "where he waited for law enforcement to appear and arrest him." Aplt. Br. at 11.

Although the allegations against Mr. Richards have unusual aspects, they remain serious. The charged crime carries a 20-year maximum sentence, and the government anticipates that the sentencing guidelines will suggest a range of 51–63 months. And even if Mr. Richards did not in fact have a gun, he claimed to have one. We have no trouble concluding Mr. Richards's charge is a serious one. *Cf. United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1226 (10th Cir. 2007) (concluding a crime was serious when it carried a 20-year maximum sentence and an anticipated guidelines range of 77–96 months).

Still, special circumstances may reduce the importance of the government's interest in prosecution. *Sell*, 539 U.S. at 180. One established circumstance reducing the importance of prosecution is a defendant's having "already been confined for a significant amount of time" that will be credited against any future sentence. *Id.*

Mr. Richards argues that the length of his pretrial confinement makes the government's interest in prosecution insufficiently important. After all, he notes, he

4

has already been confined for more than 28 months.  By the time he is restored to competency and brought to trial, he estimates, he might well have been confined for four years (approaching the bottom of the anticipated guidelines range).

While his pretrial confinement "affects" the importance of the prosecution, it "does not totally undermine" it.  *Id.*  It is anyone's guess how long it will take to bring Mr. Richards to trial or what sentence he will ultimately receive.  Sentencing judges operate with significant discretion.  *United States v. Tindall*, 519 F.3d 1057, 1065 (10th Cir. 2008).  And although Mr. Richards has already been confined for more than two years, he nevertheless faces significant exposure if ultimately convicted.  The government's interest in prosecution remains important.

Mr. Richards argues that another special circumstance—his religious faith— sufficiently reduces the importance of the government's interest in prosecution.  We will assume that a defendant's religious faith is the type of circumstance that can lessen the government's interest.  *See United States v. Harris*, 84 F.4th 596, 600 (5th Cir. 2023).  But Mr. Richards has not expressed any specific religious belief reducing the government's interest in this case.  For one thing, he expressed no religious objection to medication itself.  *Cf. id.* (recognizing that the defendant's religious belief prevented "him from taking medication").  And for another, he opined that only *voluntarily* taking the recommended drugs would be "deceitful to God."  R. vol. 3 at 53.

\*       \*       \*

Mr. Richards's pretrial confinement and religious beliefs (alone or combined) do not diminish the government's interest in prosecution to the point that forced medication is unavailable under *Sell*.  The district court's order is affirmed.

Entered for the Court


Gregory A. Phillips
Circuit Judge