FILED
United States Court of Appeals
Tenth Circuit

May 1, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

AARON JASON COPE,

      Defendant - Appellant.

No. 11-1537

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:11-CR-00106-JRT-1 )**

Timothy V. Anderson, Anderson & Associates, Virginia Beach, Virginia, appearing for the Appellant.

Sergio Garcia, Special Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Colorado, appearing for the Appellee.

Before **LUCERO, EBEL,** and **MATHESON,** Circuit Judges.

**MATHESON**, Circuit Judge.

    Aaron Jason Cope was convicted of one count of operating a common carrier—a

commercial airplane—under the influence of alcohol in violation of 18 U.S.C. § 342. On

appeal, Mr. Cope challenges his conviction based on improper venue, insufficiency of the evidence, and improper reliance on federal regulations. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Title 18 U.S.C. § 342 provides that "[w]hoever operates or directs the operation of a common carrier while under the influence of alcohol or any controlled substance . . . shall be imprisoned not more than fifteen years or fined under this title, or both." A common carrier includes "a locomotive, a rail carrier, a sleeping car carrier, a bus transporting passengers in interstate commerce, a water common carrier, and an air common carrier." 18 U.S.C. § 341. "An individual with a blood alcohol content of .10 percent or more shall be presumed to be under the influence of alcohol." *Id.* § 343(1).

### A. *Factual Events*

On December 8, 2009, Mr. Cope was the copilot and first officer of a commercial flight from Austin, Texas to Denver, Colorado—United Express Flight 7686—operated by Shuttle America, Inc., a subsidiary of Republic Airways. Robert Obodzinski was the captain. Mr. Cope and Mr. Obodzinski were both employees of Shuttle America.

The day before the flight, Mr. Obodzinski and Mr. Cope flew from Denver to Austin. After they arrived in Austin, they went to a local hotel with their other crew members. Mr. Obodzinski invited the crew to dinner, but Mr. Cope declined, stating that he did not feel well.

Mr. Obodzinski did not see Mr. Cope again until the next morning in the hotel

lobby. Mr. Obodzinski testified that "[Mr. Cope] had a little bit of a puffy face, and his eyes were a little red, and I assumed that since he said the night before he wasn't feeling well, that he was probably coming down with a cold." Appx., Vol. I, at 177.

Mr. Obodzinski and Mr. Cope flew from Austin to Denver that morning without incident. While in the cockpit, Mr. Obodzinski detected occasional hints of the smell of alcohol. Initially, Mr. Obodzinski thought the smell was coming from a spilled drink in the cabin outside the cockpit. But when they arrived in Denver, Mr. Obodzinski leaned over Mr. Cope and "took a big whiff." *Id.* at 191. He concluded that the smell of alcohol was coming from Mr. Cope.

After completing his post-flight duties, Mr. Obodzinski contacted dispatch to delay the next leg of their flight. He also spoke with his chief pilot and Republic Airways' human resources officer. After conferring with these company representatives, Mr. Obodzinski advised Mr. Cope: "If you have any problem taking a breathalyzer, call off sick and get out of here." *Id.* at 196. According to Mr. Obodzinski, Mr. Cope "just kind of stood there looking at me blank faced. . . . He said, [']Well I guess I better call off sick then.[']" *Id.* at 197.

Mr. Obodzinski received instructions to escort Mr. Cope to a breath testing facility in the Denver airport. Richard Jones, a breath-alcohol technician, administered two breathalyzer tests on Mr. Cope, one at 10:33 a.m. and another at 10:54 a.m. The result of the first test was .094 and the second was .084. Based on these results, Mr. Cope was not permitted to fly the next leg of his scheduled flight.

Mr. Cope was indicted by the federal grand jury in the District of Colorado for operating a common carrier while under the influence of alcohol in violation of 18 U.S.C. § 342. Mr. Cope waived his right to a jury trial. After a two-day bench trial, the district court convicted Mr. Cope and sentenced him to a below-guidelines sentence of six months in prison and two years of supervised release.

**B. *The Trial Testimony***

**1. *The Breathalyzer Test***

At trial, both parties spent significant time discussing the validity of the results of the two breathalyzer tests. The government's expert, Cynthia Burbach, a forensic toxicologist working for the State of Colorado, testified that the results were valid and accurate.

Ms. Burbach based her testimony on the results of the breathalyzer tests and the absence of evidence that Mr. Cope ingested any alcohol during or after the flight. She testified that, at the time of the tests, Mr. Cope was no longer absorbing alcohol. He was instead in the alcohol elimination phase.

Ms. Burbach explained that the average elimination rate is between .01 and .025 milligrams per deciliter per hour but that she had observed elimination rates as high as .036 per hour in the laboratory and as high as .056 per hour in the literature. She observed that Mr. Cope's elimination rate as exhibited by the two breathalyzer tests was

higher than average. [1] Based on his higher-than-average elimination rate, Ms. Burbach said that Mr. Cope was "absolutely an experienced drinker." Appx., Vol. II, at 378.

She further testified that breath testing has a .02 variance and that if two results on the type of breathalyzer machine that Mr. Jones used are within .02, "those are two good tests." [2] *Id.* at 396. When asked during cross-examination whether there was a possibility that the breathalyzer test produced invalid results, Ms. Burbach responded: "Yes. [But] I don't have any evidence that shows me there's an invalid result." *Id.* at 459.

Mr. Jones, the breath alcohol technician who administered Mr. Cope's breathalyzer tests, also testified to the reliability of the results. He said the breathalyzer machine functioned properly, had recently passed its monthly accuracy test, and was calibrated to Denver's high altitude. Mr. Jones stated that a pre-test scan indicated that there was no alcohol in the ambient air in the testing facility.

Mr. Cope's expert, Dr. Patricia Rosen, a board certified physician in internal and emergency medicine and toxicology, testified that the breathalyzer results could not be scientifically accurate. She explained that the elimination rate demonstrated by the

---

[1]Ms. Burbach did not testify as to the rate that Mr. Cope was eliminating alcohol. Mr. Cope, however, explains in his brief that the results of the two breathalyzer tests demonstrate an elimination rate of .033. *See* Aplt. Br. at 17-18.

[2]Later, Hansueli Ryser, a vice president from the company that manufactured the breathalyzer machine, testified "that the instrument is accurate to plus or minus 5% or plus or minus .005% BAC, whichever is greater." Appx., Vol. II, at 483.

results of the breathalyzer tests was higher than anything she had ever seen or read about in the literature and that such an elimination rate was "not physiologically possible."[3] *Id.* at 537. Dr. Rosen opined that the results were not "accurate with a medical degree of certainty," *id.*, and that she would not trust them if she saw them in the emergency room.

### 2. *Mr. Cope's Alcohol Consumption the Night Before the Flight*

Mr. Obodzinski did not see Mr. Cope from the time that they arrived at their hotel in Austin until they left for the airport the next morning. But he testified that, while they were at the Denver airport, Mr. Cope made statements to him about consuming alcohol the night before. Mr. Cope told Mr. Obodzinski that he had consumed "a couple [of] beers before bed." Appx., Vol. I, at 198. Then, while waiting for the train at the Denver airport to go to the testing facility, Mr. Cope mentioned that he also drank some whiskey the night before. Finally, while in the waiting room at the testing facility, Mr. Cope told Mr. Obodzinski that he had visited a bar with a friend in Austin and also had purchased beer at a gas station.

### 3. *Mr. Cope's Physical Signs of Impairment*

Mr. Obodzinski testified that Mr. Cope performed his duties properly on the flight. He said the only outward signs that Mr. Cope exhibited were his red eyes and puffy face

---

[3]Dr. Rosen backed away from this statement on cross-examination. She testified that she had only seen a .025 elimination rate in the literature. When asked if she had seen other rates, she testified: "I haven't looked specifically for that particular number. It would be very, very unusual. It would have to be someone with a very high metabolic rate who probably is a chronic alcoholic." Appx., Vol. II, at 557-58.

at the hotel before the flight and the smell of alcohol during the flight.

Mr. Jones provided similar testimony. He stated that he smelled alcohol on Mr. Cope but that Mr. Cope otherwise acted normally and did not exhibit any outward signs of impairment.

### 4. *Expert Opinion on Impairment*

Both experts testified about the effects of alcohol and when an individual is considered impaired. Ms. Burbach testified that the scientific community considers any individual with a blood alcohol content ("BAC") greater than .05 to be impaired. She explained that experienced drinkers "have tolerance to the visible effects [of alcohol] but . . . cannot have tolerance to the cognitive effects," Appx., Vol. II, at 372, meaning that experienced drinkers generally do not exhibit outward signs of intoxication until their BAC is significantly higher than that of inexperienced drinkers.

Ms. Burbach concluded that Mr. Cope's "cognitive and psychomotor function was impaired." *Id.* at 437. She also concluded that Mr. Cope's ability to operate an aircraft would have been diminished and that "he would have been unsafe to operate [the] aircraft." *Id.* at 415.

Dr. Rosen admitted that an individual with a BAC of .084 should not be operating an aircraft. But when asked whether she thought Mr. Cope was impaired in light of the evidence that he performed his duties competently, she testified: "[I]f he did everything he was supposed to do and his behavior was normal, I don't know that I would be uncomfortable with him flying. I don't know that I would be able to say he was

impaired." *Id.* at 569.

### C. *The District Court's Opinion*

The district court concluded that the government proved beyond a reasonable doubt that Mr. Cope was guilty of operating a common carrier while under the influence of alcohol. It noted that the "most compelling" evidence against Mr. Cope were the breathalyzer tests reflecting a BAC of .094 and .084. *United States v. Cope*, No. 11-CR-00106-JRT, 2011 WL 2491283, at *5 (D. Colo. June 17, 2011). As the district court stated: "It is clear that [Mr.] Cope was in the elimination phase of his alcohol consumption, meaning that his BAC was well above .094 percent during the flight." *Id.* at *6.

The district court understood Ms. Burbach's testimony to explain that "an individual need not exhibit visible effects of alcohol consumption to be under its influence and significantly cognitively impaired." *Id.* at *7. The court concluded that Mr. Cope was under the influence of alcohol when he operated the flight from Austin to Denver. It also noted that "it is highly probable that [Mr.] Cope's BAC was at least .10 percent when the flight departed." *Id.* But the court did not rest its conclusion on Mr. Cope's BAC being over .10 percent, stating that "[e]ven in the unlikely circumstance that [Mr.] Cope's BAC never rose above .094 percent, the Court still concludes that he was under the influence of alcohol while operating a common air carrier." *Id.*

## II.    DISCUSSION

On appeal, Mr. Cope contends that (1) venue was improper in the District of

-8-

Colorado, (2) there was insufficient evidence to support his conviction, and (3) the district court improperly relied on federal regulations.

### A. *Venue*

Mr. Cope argues that there is no evidence that he was "under the influence of alcohol" in Colorado and thus venue in the District of Colorado was improper. We disagree.

"Although venue is not the focal point in most criminal matters, it is not a mere technicality. It is a constitutional consideration and an element of every crime." *United States v. Kelly*, 535 F.3d 1229, 1233 (10th Cir. 2008) (citations omitted) (quotations omitted). "Both Rule 18 of the Federal Rules of Criminal Procedure and [Art. III, § 2, cl. 3 of] the Constitution require that a person be tried for an offense where that offense is committed." *United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011) (quotations omitted).

"As a general rule, our review of challenges to evidence of proper venue is quite deferential." *United States v. Evans*, 318 F.3d 1011, 1021 (10th Cir. 2003). "In reviewing whether venue lies in a particular district we view the evidence in the light most favorable to the government and make all reasonable inferences and credibility choices in favor of the finder of fact." *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1118 (10th Cir. 2011) (quotations omitted), *cert. denied*, 132 S. Ct. 540 (2011). The government must "prove[] by [a] preponderance of direct or circumstantial evidence that the crimes charged occurred within the district." *Kelly*, 535 F.3d at 1233.

-9-

Title 18 U.S.C. § 3237, titled "Offenses begun in one district and completed in another," states that "[a]ny offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense and . . . may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves." As we explain below, Mr. Cope was "under the influence of alcohol" during the flight. Because he was operating a common carrier in interstate commerce, it is immaterial whether he was "under the influence of alcohol" in Colorado. *See United State v. Breitweiser*, 357 F.3d 1249, 1253 (11th Cir. 2004) ("To establish venue, the government need only show that the crime took place on a form of transportation in interstate commerce."). Venue is proper in any district through which Mr. Cope traveled on the flight, including the District of Colorado.

**B.** *Sufficiency of the Evidence*

"We review sufficiency-of-the-evidence claims de novo . . . ." *United States v. Irving*, 665 F.3d 1184, 1193 (10th Cir. 2011) (quotations omitted) (citation omitted) *cert. denied*, —S.Ct.—, 2012 WL 692968 (Apr. 2, 2012). "[E]vidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government, a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Hoskins*, 654 F.3d 1086, 1090 (10th Cir. 2011). "We will not weigh conflicting evidence or second-guess the fact-finding decisions of the district court." *Id.* (quotations omitted). "Where conflicting evidence exists, we do not question the [fact-finder's] conclusions regarding the credibility of witnesses or the

relative weight of evidence." *United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001).

"[N]or will we examine the evidence in bits and pieces. Rather, we evaluate the sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole." *Irving*, 665 F.3d at 1193 (citations omitted) (quotations omitted). Of particular importance here, "it is solely within the province of the [fact-finder] to weigh th[e] expert testimony." *United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001) (quotations omitted). This "restrictive standard of review . . . provides us with very little leeway in conducting this review of the evidence." *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005) (quotations omitted).

Mr. Cope argues that (1) the district court put improper weight on the breathalyzer tests, which he contends are invalid, and (2) there was insufficient evidence that he was "under the influence of alcohol" for the purposes of 18 U.S.C. § 342.

### 1. *Breathalyzer Tests*

Mr. Cope argues that the district court put too much weight on the results of the two breathalyzer tests in light of Dr. Rosen's testimony that they were unreliable.[4]

The district court found that the two breathalyzer tests were the "most compelling" evidence against Mr. Cope. *Cope*, 2011 WL 2491283, at *5. Although the court

---

[4]Mr. Cope does not challenge the admissibility of the breathalyzer test results. At oral argument, his counsel confirmed that his challenge is to the weight accorded this evidence and is based on the district court's statement that the results of the breathalyzer tests were the "most compelling" evidence against Mr. Cope. *See* Oral Argument at 5:45.

acknowledged that the difference in the two results was "significant" given the 20-minute time period between them, it "conclude[d] that the breath test results [we]re valid and reliable within the confines of the analytic variability expected of such a device." *Id.* at *6. The court stated that Mr. Cope's experience drinking alcohol, the .02 percent variability inherent in the breathalyzer results, and the testimony that the breathalyzer machine was functioning properly showed that the difference between the two results did not render the tests invalid or unreliable.

The district court did not err in relying on the results of the breathalyzer tests. Although Mr. Cope's expert, Dr. Rosen, testified that the .033 elimination rate suggested by the results of the breathalyzer tests was "not physiologically possible," Appx., Vol. II, at 537, the government's expert, Ms. Burbach, testified that she had seen elimination rates of .036 in the laboratory and as high as .056 in the literature. She also testified that Mr. Cope's high elimination rate demonstrated that he was an experienced drinker and that there was no evidence that the results of the breathalyzer tests were invalid.

"[W]e are not in the position to revisit the [fact-finder's] credibility assessments, nor are we allowed to re-weigh conflicting evidence." *United States v. Oldbear*, 568 F.3d 814, 824 (10th Cir. 2009). Further, "[w]e do not question the [fact-finder's] . . . conclusions about the weight of the evidence." *United States v. Bowen*, 437 F.3d 1009, 1014 (10th Cir. 2006) (quotations omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight . . . ."). The district court was entitled to weigh this competing testimony, and we cannot say

that the district court put improper weight on the breathalyzer results.

### 2. *"Under the Influence of Alcohol"*

Mr. Cope challenges the sufficiency of the evidence that he was "under the influence of alcohol" for the purposes of 18 U.S.C. § 342.[5] The district court found that even without 18 U.S.C. § 343's presumption that an individual with a BAC above .10 is "under the influence," the combination of Mr. Cope's red eyes and puffy face, his odor of alcohol during and after the flight, the results of the breathalyzer tests taken nearly three hours after the flight left Austin, and expert testimony that an individual need not exhibit visible signs of alcohol consumption to be impaired, was "overwhelming [evidence] that [Mr.] Cope was under the influence of alcohol during the flight." *Cope*, 2011 WL 2491283, at *7.

The term "under the influence of alcohol" as used in 18 U.S.C. § 342 is not defined. When a term is undefined in the statute, we give it its ordinary, everyday meaning. *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *United States v.*

---

[5]Mr. Cope also faults the district court for referencing 18 U.S.C. § 343's presumption that "an individual with a blood alcohol content of .10 percent or more shall be presumed to be under the influence of alcohol." He argues that he presented sufficient evidence to rebut any presumption that he was "under the influence of alcohol."

But the district court's conclusion that Mr. Cope was "under the influence of alcohol" does not rest on whether his blood alcohol level was ever above .10. The court stated that "[e]ven in the unlikely circumstance that [Mr.] Cope's BAC never rose above .094 percent, the Court still concludes that he was under the influence of alcohol while operating a common air carrier." *Cope*, 2011 WL 2491283, at *7.

Because the district court did not rely on 18 U.S.C. § 343's presumption, we need not consider whether Mr. Cope rebutted that presumption.

-13-

*Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002). We have explained that "[t]he prohibition of operating an aircraft while under the influence of alcohol can be reasonably understood due to the ordinary meaning of the words." *Sorenson v. Nat'l Transp. Safety Bd.*, 684 F.2d 683, 686 (10th Cir. 1982). The term "under the influence [of alcohol] is commonly understood to mean . . . a state of intoxication that lessens a person's normal ability for clarity and control." *Gov't of Virgin Islands v. Steven*, 134 F.3d 526, 528 (3d Cir. 1998); *see also* Black's Law Dictionary 1665 (9th ed. 2009) (defining "under the influence" as "deprived of clearness of mind and self-control because of drugs or alcohol"); *id.* at 898 (defining "intoxication" as "[a] diminished ability to act with full mental and physical capabilities because of alcohol or drug consumption").

As the ensuing discussion concludes, the trial evidence was sufficient for a reasonable fact-finder to conclude that Mr. Cope's ability for clarity and control was lessened and that he was thus "under the influence of alcohol."

Mr. Cope contends that he was not "under the influence of alcohol" because he did not exhibit outward signs of impairment.[6] He relies on Mr. Obodzinski's statements that he properly performed his duties and that both Mr. Obodzinski and Mr. Jones testified

---

[6]Although 18 U.S.C. § 343 creates a presumption that an individual with a BAC over .10 percent is "under the influence of alcohol," there is no requirement that an individual have a BAC over .10 to be considered "under the influence of alcohol." *See United States v. Prouse*, 945 F.2d 1017, 1026 (8th Cir. 1991) (rejecting the defendants' argument that .10 is a minimum threshold for being "under the influence of alcohol"); *see also Hughes v. McNeil*, No. 08-22541-CIV, 2010 WL 282592, at *10 (S.D. Fla. Jan. 22, 2010) (unpublished) ("[T]he .10 limit is simply the amount above which intoxication is presumed, and is not a minimum level for finding an individual is under the influence.").

that, other than the smell of alcohol, Mr. Cope did not show any external signs of impairment.

The defendants in *United States v. Prouse*, 945 F.2d 1017 (8th Cir. 1991), made a similar argument. Each member of the three-man flight crew was convicted of operating a common air carrier while under the influence of alcohol in violation of 18 U.S.C. § 342. *Id.* at 1020. The three men were observed the night before their flight "drinking heavily late into the night." *Id.* They arrived at the airport with "flushed faces," "bloodshot eyes," and "an odor of stale alcohol on [their] breath." *Id.* at 1021. Blood alcohol tests taken after the flight showed that their BACs were .13, .06, and .08. *Id.* at 1022. Using the results of a second blood test to estimate the crew members' BACs when the flight departed, a government expert testified that their BACs would have been in the following ranges when the flight departed: .15-.21, .08-.14, and .10-.16. *Id.* The government presented expert testimony that, even at the low end of these ranges, all of the defendants could be considered "under the influence of alcohol." *Id.*

The members of the flight crew challenged their conviction on several grounds, including sufficiency of the evidence. They argued that their conviction should be reversed because "there was no direct evidence of impairment." *Id.* at 1025. The Eighth Circuit cited numerous factors in concluding that there was sufficient evidence to uphold the conviction, including that the flight crew members were intoxicated the night before, arrived late to work with bloodshot eyes and smelling of stale alcohol, failed to check in with an FAA official when they knew he was investigating whether they had violated

FAA alcohol regulations, and had relatively high BACs two hours and forty-five minutes after the flight departed. *Id.* The Eighth Circuit stated that, "[b]ased on this evidence, the case was not even close." *Id.*

In this case, similar evidence supports the district court's conclusion that Mr. Cope was "under the influence of alcohol." Mr. Cope admitted to having numerous drinks the night before the flight. He told Mr. Obodzinski that he had consumed a couple of beers, went to a bar with a friend, consumed some whiskey, and bought beer at a gas station.[7] Also, in response to Mr. Obodzinski's admonition that he should "call off sick" if he would fail a breathalyzer test, Mr. Cope responded, "Well, I guess I better call off sick then," Appx., Vol. I, at 196-97, indicating his awareness of his alcohol consumption.

Mr. Obodzinski testified that Mr. Cope had red eyes and a puffy face when they met in the lobby of their Austin hotel on the morning of the flight. Mr. Obodzinski and Mr. Jones also both testified that Mr. Cope smelled of alcohol.

Finally, and most importantly, Mr. Cope's BAC was .094 nearly three hours *after* the flight departed from Austin. Ms. Burbach testified that Mr. Cope's "cognitive and

---

[7]The district court acknowledged these facts but accorded them no weight because there is no "contemporaneous documentation of [Mr.] Obodzinski sharing these admissions." *Cope*, 2011 WL 2491283, at *6 n.3. In reviewing the sufficiency of the evidence, however, we examine "all evidence." *United States v. Taylor*, 592 F.3d 1104, 1108 (10th Cir. 2010); *United States v. Kimler*, 335 F.3d 1132, 1140 (10th Cir. 2003) ("[We] affirm[] the district court unless no [fact-finder], when presented with *the evidence introduced at trial* together with the reasonable inferences therefrom, could find the defendant guilty beyond a reasonable doubt." (emphasis added)); *Magleby*, 241 F.3d at 1312 ("[W]e review the record *as a whole* . . . ." (emphasis added)). Unlike the district court, we see no reason why Mr. Cope's admissions should not be considered.

-16-

psychomotor function was impaired," Appx., Vol. II, at 437, that his ability to operate an aircraft was diminished, and that he could not do so safely.

In arguing that his lack of outward signs of impairment prevents us from upholding the district court's conclusion that he was "under the influence of alcohol," Mr. Cope improperly equates outward impairment with being "under the influence of alcohol." Title 18 U.S.C. § 342 prohibits operating a common carrier while "under the influence of alcohol," not operating a common carrier while outwardly impaired. Although outward signs of impairment may be probative that someone is "under the influence of alcohol," one can be "under the influence of alcohol" without outward signs of impairment. *Cf. United States v. Pelletier*, 105 Fed. Appx. 216, 217 (9th Cir. 2004) (unpublished) ("[The defendant's] DUI conviction required proof that he operated the vehicle while he was under the influence of alcohol, but did not require proof of an actual act of unsafe driving."); *State v. Neal*, 176 P.3d 330, 338 (N.M. Ct. App. 2007) ("The [state] statute gives notice, according to the plain meaning of the word 'influence,' that the Legislature intends to criminalize a condition less than intoxication, but 'influenced' to any degree by alcohol, no matter how slight.").

Further, Mr. Cope's argument only goes so far. First, the argument overlooks that Mr. Obodzinski observed Mr. Cope's red eyes and puffy face before the flight and smelled alcohol on Mr. Cope during the flight. But far more important, Ms. Burbach testified that an individual can be under the influence of alcohol without exhibiting outward signs of impairment. She explained that experienced drinkers, such as Mr.

-17-

Cope, can mask the external signs of intoxication and that ability does not mean that Mr. Cope was not cognitively impaired and "under the influence of alcohol." According to Ms. Burbach, a person with Mr. Cope's BAC is cognitively impaired and unable to operate an aircraft safely.[8]

"[V]iewing the evidence and all reasonable inferences therefrom in the light most favorable to the government," *Hoskins*, 654 F.3d at 1090, we hold that there was sufficient evidence for a reasonable fact-finder to conclude that Mr. Cope was "under the influence of alcohol" when he operated the flight from Austin to Denver and violated 18 U.S.C. § 342. Even though there is evidence that Mr. Cope was not outwardly impaired, the government presented evidence that an individual can be "under the influence of alcohol" without exhibiting outward signs of impairment and that Mr. Cope was cognitively impaired. Mr. Cope's BAC was .094 over three hours after his flight departed. This high BAC combined with the evidence that Mr. Cope drank a significant amount of alcohol the night before the flight, implicitly admitted that he would fail a breathalyzer test, smelled of alcohol, and had red eyes and a puffy face before the flight, is sufficient evidence for a reasonable fact-finder to find that Mr. Cope was "under the influence of alcohol" for the purposes of 18 U.S.C. § 342 when he operated the flight

_____

[8]Indeed, it is arguably even more dangerous when a pilot is able, as an experienced drinker, to mask his significant consumption of alcohol to outside observers, including the flight crew, and thereby lessen the probability that he will be prevented from flying in the first place, even though, according to Ms. Burbach, his judgment is compromised.

from Austin to Denver.[9]

## C. *Reliance on Federal Regulations*

Finally, Mr. Cope argues that the district court improperly relied on FAA regulations and airline policies in determining that he was "under the influence of alcohol" for the purposes of 18 U.S.C. § 342. He contends this was improper because violations of FAA regulations do not constitute criminal offenses. At trial, witnesses mentioned FAA regulations and airline policies concerning the consumption of alcohol by airline pilots.

Title 14 C.F.R. § 91.17(a) provides:

No person may act or attempt to act as a crewmember of a civil aircraft—
    (1)    Within 8 hours after the consumption of any alcoholic beverage;
    (2)    While under the influence of alcohol;
    (3)    . . .
    (4)    While having an alcohol concentration of 0.04 or greater in a blood or breath specimen.

Republic Airways' policy was even more strict. Its human resources manager testified that its policy prohibits pilots from drinking alcohol 12 hours before flying and prohibits pilots from flying if they have a BAC above .02. She also testified that Republic Airways had a zero-tolerance policy and that any test revealing a level above .02 is a ground for termination.

Mr. Cope is correct that a violation of 14 C.F.R. § 91.17(a) is not a crime. *See*

---

[9]We emphasize that it is the combination of these factors, not solely Mr. Cope's high BAC, that leads us to this conclusion.

*Prouse*, 945 F.2d at 1024; *see also United States v. Hilliard*, 31 F.3d 1509, 1516 (10th Cir. 1994) ("Although the evidence concerning a civil violation may be used to prove knowledge or intent, it may not be used to prove criminal liability."). Although the district court mentioned the BACs in the FAA regulations and Republic Airways' zero-tolerance policy in its findings of fact, it did not reference them in its conclusions of law in finding that Mr. Cope was "under the influence of alcohol."

Instead, the district court relied on the testimony that Mr. Cope had red eyes and a puffy face, smelled of alcohol, and had two breathalyzer tests that read .094 and .084.

Further, because we hold that the district court had sufficient evidence to find that Mr. Cope was "under the influence of alcohol," even if the district court relied on the FAA regulations or Republic Airways' company policy, such reliance would have been harmless error. *See Irving*, 665 F.3d at 1209 (explaining that non-constitutional errors are harmless if they do not affect a substantial right and that "[a]n error affecting a substantial right of a party is an error that had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." (quotations omitted)).

## III. CONCLUSION

For the foregoing reasons, we affirm the district court.