FILED
United States Court of Appeals
Tenth Circuit

January 3, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEEGAN VAN TUYL,

Defendant-Appellant.

No. 12-6121
(D.C. No. 5:11-CR-00303-F-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

Keegan Van Tuyl appeals his conviction and sentence for assault resulting in

serious bodily injury in violation of 18 U.S.C § 113(a)(6). Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Evidence of Serious Bodily Injury*

Van Tuyl stipulated that he assaulted another prisoner in a holding cell at the Federal Transfer Center in Oklahoma City on December 1, 2010. He contends the evidence was insufficient to support the district court's finding, after a bench trial, that the victim's injury constituted a "serious bodily injury."

"We review sufficiency-of-the-evidence claims de novo[.]" *United States v. Cope*, 676 F.3d 1219, 1225 (10th Cir. 2012) (quotation omitted). In doing so, we view the evidence and all reasonable inferences in the light most favorable to the government. *See id.* "Evidence is sufficient to support a conviction if . . . a rational trier of fact could find guilt beyond a reasonable doubt." *Id.* (quotation and brackets omitted). Moreover, "[w]e will not weigh conflicting evidence or second-guess the fact-finding decisions of the district court." *Id.* (quotation omitted).

For purposes of a conviction under § 113(a)(6), the term "serious bodily injury" is defined in 18 U.S.C. § 1365 as: "bodily injury[1] which involves-- (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *Id.* § 1365(h)(3); *see also* § 113(b)(2) (incorporating § 1365 definition). The district court found beyond a reasonable

---

[1]    A "bodily injury" is further defined as "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of the function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary." 18 U.S.C. § 1365(h)(4).

doubt that Van Tuyl's victim suffered extreme physical pain, as well as protracted impairment of the function of both of his eyes and his left ear. *See* 18 U.S.C. § 1365(h)(3)(B), (D).

Because the victim had no memory of being in pain immediately after the assault, the district court relied on the testimony of a nurse who observed him in an urgent care room before he was transported to a hospital by ambulance. The nurse testified that the victim was bleeding from his eye and his ear, and one of his eyes was swollen shut. The nurse rated his pain level as a "10" on a scale of 0-10, and she said that he remained in extreme pain until the ambulance arrived. The district court also cited the nature of the assault and the extent of the victim's injuries, in finding that they involved extreme physical pain. Based on a video tape of the attack, the court found that Van Tuyl hit the victim with approximately ten serious blows with his fist and three with his foot. A CAT scan revealed that the victim suffered fractures to his face and skull, and there was also evidence that he received morphine in the hospital. The victim testified that he experienced a continuing hearing loss due to constant ringing or buzzing in his left ear, and he also had an ongoing loss of vision. The district court found the victim's testimony to be credible.

Van Tuyl argues that the evidence is insufficient to support the district court's finding that the victim suffered serious bodily injury. But his contentions merely invite this court to re-weigh evidence and second-guess the district court's credibility determinations. *See Cope*, 676 F.3d at 1225 ("Where conflicting evidence exists, we

do not question the fact-finder's conclusions regarding the credibility of witnesses or the relative weight of evidence." (quotation and brackets omitted)).

Van Tuyl first points to the victim's testimony that his pain resulting from the attack was not as severe as the pain he experienced from a previous burn-related injury. But that testimony described the victim's pain from ongoing headaches, which the district court expressly did *not* rely on in finding that he had experienced extreme physical pain. Van Tuyl next argues that the district court erred in relying on the nurse's testimony regarding the victim's level of pain because it was inconsistent with the video tape of the assault, which showed that the victim got up from the floor and walked unassisted, while conversing with prison personnel. But the court found that the victim's behavior on the tape was "neither terribly surprising nor inconsistent with extreme physical pain and protracted loss or impairment of the function of a bodily member, organ, or mental faculty." R., Vol. 3, pt. 1 at 74. Van Tuyl also maintains that the victim's behavior observed by the nurse could easily be faked or exaggerated and that he had a motivation to do so. But the district court emphasized that the nurse had perceived the victim's level of pain based on her seventeen years of experience and she did not suggest that he was faking or malingering.

Regarding the district court's finding that the victim's injuries involved protracted loss or impairment of the function of bodily organs, Van Tuyl asserts that the effects described by the victim are not objectively measurable and they involve

conditions that occur naturally in the aging process. He notes that the sole evidence of these conditions was the victim's testimony. But, again, the district court found that testimony to be credible.

Based on the evidence cited by the district court, we are not persuaded that a rational trier of fact would be unable to find beyond a reasonable doubt that Van Tuyl's victim suffered "serious bodily injury" as defined by § 1365(h)(3). We therefore affirm his conviction under § 113(a)(6) for assault resulting in serious bodily injury.

### *Reasonableness of Sentence*

Van Tuyl also argues that his sentence is unreasonably long. Because he does not challenge the district court's calculation of the applicable guidelines range, we consider only whether his sentence is reasonable in light of the factors listed in 18 U.S.C. § 3553(a). *See United States v. Valtierra-Rojas*, 468 F.3d 1235, 1238 (10th Cir. 2006). "The district court has significant discretion in sentencing, and our review for reasonableness, regardless of whether the sentence falls inside or outside the advisory Guidelines, is a review for abuse of discretion." *United States v. Tindall*, 519 F.3d 1057, 1065 (10th Cir. 2008).

The district court found that Van Tuyl's applicable guidelines range was 37 to 46 months' imprisonment. He asked for a sentence within that range, and the government argued for a sentence above it. The court sentenced him to 108 months' imprisonment, citing the following evidence: Van Tuyl's unprovoked attack on the

victim; his status as a founding member of two related white-supremacist organizations aimed at encouraging and committing hate crimes against racial minorities; his persistence, even after incarceration, in recruiting like-minded individuals to join these groups; his violent, assaultive conduct going back to 2004; and his continued assaultive conduct and destruction of property while incarcerated.

The court concluded that the most relevant sentencing factors were the need to protect the public, the need to reflect the seriousness of the offense, and the need to provide just punishment. *See* § 3553(a)(2)(A), (C). It found that the sheer cruelty of the assault in this case, against the backdrop of Van Tuyl's history of assaultive conduct, showed that the guidelines range was insufficient to reflect the seriousness of the offense. It cited the lack of provocation for the attack as supporting a longer sentence to provide just punishment. Finally, the court stated that the predominant sentencing factor—by far—was the need to protect the public from further crimes by Van Tuyl, concluding that "only incarceration can protect the general public from the defendant's demonstrated desire to hurt people." R., Vol. 3, pt. 2 at 90. Thus, the court found that a sentence substantially in excess of the guidelines range was warranted in this case.[2]

---

[2]    The district court also concluded that deterrence of similar conduct by other individuals was a significant sentencing factor, while acknowledging that deterrence of Van Tuyl was less significant because he "seek[s] out opportunities to hurt people even when he knows that he will face serious consequences for that conduct." R., Vol. 3, pt. 2 at 89.

Van Tuyl contends that 108 months' imprisonment is an enormous deviation of 62 months above the top of the applicable guidelines range. He argues that none of the district court's cited bases, individually or taken together, supports such a lengthy sentence. He first challenges the court's characterization of the assault, asserting that it was no worse than a typical bar fight. But the district court disagreed, finding that Van Tuyl inflicted thirteen "serious blows" to the victim with his fist and foot. *Id.*, Vol. 3, pt. 1 at 70. The court also noted that Van Tuyl walked across the holding cell and attacked the victim without provocation. *See id.*, Vol. 3, pt. 2 at 85. We must defer to the district court's factual findings. *See United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008).

Van Tuyl also maintains that the district court erred by relying on the lack of provocation. He asserts that the crime of assault assumes there was no provocation and that the guidelines already take this factor into account. But "district courts are . . . allowed to contextually evaluate each § 3553(a) factor, including those factors the relevant guideline(s) already purport to take into account." *Id.* Thus, the district court did not abuse its discretion by emphasizing, as relevant to the need to provide just punishment, the fact that Van Tuyl attacked the victim without provocation.

He next argues that the district court should not have increased the length of his sentence based on his history of violent conduct because he had already been punished for some of the incidents the court cited by the revocation of a previous term of supervised release. He also minimizes the seriousness of his prior conduct.

But the district court was particularly concerned with Van Tuyl's history of assaultive conduct in light of the evidence of his persistent efforts to recruit new members into his white-supremacist groups and his continued commitment to the objectives of those groups. In response to Mr. Tuyl's allocution, in which he spoke of his decision to stay out of trouble, the court commented, "[Y]ou have put me to a choice. You have required me to decide whether I should be persuaded by what you say or what you have done. I find what you have done much more persuasive than what you say." R., Vol. 3, pt. 2 at 87-88. We cannot say that the district court's consideration of Van Tuyl's previous violent conduct in this context was an abuse of discretion.

Van Tuyl also takes issue with the district court's conclusion that a long sentence was necessary to protect the public from his criminal activity. He contends that a within-guidelines sentence would be long enough for him to demonstrate that he has changed his behavior, and if he fails to do so, he could be prosecuted again and sentenced to more prison time. He claims that a shorter sentence with the possibility of further prosecution would sufficiently protect the public. But the district court concluded otherwise, and Van Tuyl provides no basis for us to find that it abused its discretion in doing so.

Finally, Van Tuyl cites statistics regarding sentences imposed for federal assault offenses, arguing that his sentence is more than twice as long as the average. But the government points out that the statistics he cites address all types of assaults

and do not take into account the particular circumstances of an offense or the offender's history and characteristics. Consequently, Van Tuyl's disparity argument fails. *See Tindall*, 519 F.3d at 1066 (rejecting disparity argument where defendant "failed to explain how his circumstances-criminal history as well as conduct-are similar to those with which he seeks to draw a comparison"). Van Tuyl has identified no error that would allow us to conclude that the district court imposed a substantively unreasonable sentence.

The judgment of the district court is affirmed.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge