**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 4, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LERAY EUGENE RICHARDS, a/k/a
Le'Ray Eugene Richards, a/k/a Cory
Tremell Brown,

    Defendant - Appellant.

Nos. 18-6223
and 18-6224

(D.C. Nos. 5:18-CR-00097-HE-1
and 5:18-CR-00098-HE-1)
(W.D. Oklahoma)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

On July 3, 2018, LeRay Eugene Richards pleaded guilty to three counts of

being a felon in possession of a firearm and/or ammunition in violation of 18 U.S.C.

§ 922(g)(1). Mr. Richards's Presentence Investigation Report (the "PSR") computed

an advisory sentencing range of 77–96 months based on a total offense level of 21,

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

    This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

inclusive of a four-level enhancement for Mr. Richards's use or possession of a firearm in connection with another felony offense.

The district court held a sentencing hearing, at which the government presented evidence on the factual basis for the four-level increase. After hearing testimony and other evidence from the parties, the district court found by a preponderance of the evidence and over Mr. Richards's objection, that he used or possessed a firearm in connection with an assault or domestic violence felony offense. As a result, the district court adopted the PSR and sentenced Mr. Richards to a guidelines-range, 94-month term of imprisonment.

On appeal, Mr. Richards asserts that the district court's factual findings supporting the four-level enhancement were clearly erroneous. He further argues that his 94-month, within-guidelines sentence is substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291, we reject both contentions and affirm his sentence.

## I.     BACKGROUND

### A. *The Indictments*

On April 17, 2018, a grand jury returned two separate indictments[1] collectively charging Mr. Richards with three violations of 18 U.S.C. § 922(g)(1). The indictments emanated from two separate incidents, which we summarize below.

---

[1] The two indictments initiated separate criminal cases, but the Western District of Oklahoma's Probation and Pretrial Services office prepared a single PSR for Mr. Richards, and the district court convened a single sentencing hearing. The separate appeals of those sentences have been consolidated before this court.

### 1. The September 28, 2016, Incident

On September 28, 2016, Oklahoma City police responded to a report that Mr. Richards had broken into the home of Kieaira Perry, his ex-girlfriend, and was in possession of a firearm. Mr. Richards was observed exiting the home as officers arrived, only to reenter the home for several seconds before reemerging, at which point he was arrested. During a search of Mr. Richards incident to arrest, police discovered fifty rounds of ammunition for a .22 long rifle, as well as a taser. Ms. Perry permitted police to search her home, which led to the discovery of Mr. Richards's .22 long rifle caliber pistol under Ms. Perry's couch. The firearm was both magazine and chamber loaded, with the safety off and the hammer in the "cocked" position. Ms. Perry's PlayStation gaming console was missing and was later discovered in the car Mr. Richards had driven to Ms. Perry's home. The police discovered a little more than half a gram of crack cocaine on Mr. Richards's person during a further search upon admission to the detention facility.

### 2. The October 27, 2017, Incident

On October 27, 2017, police responded to reports of a fight involving a firearm at an apartment complex in Midwest City, Oklahoma. The complex's security guards told police they had asked Mr. Richards for identification as he entered the apartment complex. Mr. Richards failed to produce identification, and instead tried to remove a

---

Following the parties' citation convention, all cites to the sentencing transcript ("Tr.") in this order refer to the transcript found in Volume III in the respective records on appeal.

firearm—again magazine and chamber loaded—from his clothing, at which point the security guards wrestled him to the ground and removed the firearm from his reach.

## B. *The Sentencing Hearing*

Because Mr. Richards raised a timely objection to the factual basis for his four-level sentencing enhancement, the district court received evidence at the sentencing hearing on the predicate felony conduct. The government called Sergeant Jacob Papera, the police officer who interviewed Ms. Perry and her children immediately after Mr. Richards was arrested on September 28, 2016. Sergeant Papera testified that Ms. Perry related the following facts pertaining to the sentencing enhancement: (1) she awoke to a loud banging sound to find her ex-boyfriend, Mr. Richards, in her home; (2) the two began arguing, and Mr. Richards pointed a "small, black, semi-automatic handgun" at her (Tr. at 8); and (3) her children observed Mr. Richards point the firearm at her.

Sergeant Papera further testified that he interviewed Ms. Perry's two children—ages five and seven—one at a time and outside Ms. Perry's presence. He testified that the children told him they had been roused by the same loud sounds as their mother, and when they left their bedroom to investigate, they "saw their mother arguing with Mr. Richards and him pointing the gun at her." Tr. at 9.

In rebuttal, Mr. Richards called Richard Reyna, a criminal investigator employed by the Federal Public Defender's Office. Mr. Reyna interviewed Ms. Perry about the incident at the direction of Mr. Richards's attorney. Mr. Reyna testified that Ms. Perry told him, contrary to Sergeant Papera's testimony, that her children had *not*

4

witnessed Mr. Richards point the firearm at her. But Mr. Reyna did not testify as to the source of Ms. Perry's belief that her children had not witnessed this event. Mr. Reyna further admitted he did not interview Ms. Perry's children and therefore could not speak to what they had seen from their "point of view." Tr. at 18–19. Following Mr. Reyna's testimony, Mr. Richards introduced furniture rental agreements he executed in March of 2016 that reported his address to be the same as Ms. Perry's.

After the parties concluded their presentation of evidence, the government urged the district court to find that Mr. Richards had committed burglary, relying on the fact that Ms. Perry's PlayStation was found in Mr. Richards's car. The district court declined to find that Mr. Richards had burglarized Ms. Perry's home, explaining that "[t]he evidence suggests that the defendant had stuff here and obviously a past relationship with the victim, and so I'm not persuaded that this constitutes technically a burglary, which, as counsel know, is a fairly specific sort of breaking-and-entering circumstance." Tr. at 23.

The district court instead concluded that "the government . . . established by a preponderance of the evidence that the gun was used in connection with a— essentially, an assault or domestic violence situation." Tr. at 23. Having made that finding, the district court adopted the PSR's computation of a total offense level of 21, which, when combined with Mr. Richards's criminal history category of VI, produced an advisory Guidelines sentencing range of 77–96 months of imprisonment.

After weighing the statutory factors, the district court sentenced Mr. Richards to a 94-month term of imprisonment in each case, to run concurrently.

## II.     ANALYSIS

### A. *The § 2K2.1(b)(6)(B) Offense Level Enhancement*

Under § 2K2.1(b)(6)(B) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), a defendant's total offense level is increased by four levels if he "used or possessed any firearm or ammunition in connection with another felony offense." Application note 14 to U.S.S.G. § 2K2.1 clarifies that this sentencing enhancement applies "if the firearm or ammunition facilitated . . . another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A).

We have explained that § 2K2.1(b)(6)(B) "contains three elements: the defendant must (1) use or possess a firearm (2) in connection with (3) another felony offense." *United States v. Marrufo*, 661 F.3d 1204, 1207 (10th Cir. 2011). As with all sentencing enhancements, the government bears the burden of proving these elements by a preponderance of the evidence. *See United States v. Orr*, 567 F.3d 610, 614 (10th Cir. 2009). Mr. Richards disputes only the third element of the enhancement, contending the district court erred by finding he committed another felony offense.[2]

---

[2] At sentencing, neither the district court nor the parties pointed to the precise statute that makes Mr. Richards's conduct a felony. On appeal, the government asserts that Mr. Richards violated Oklahoma's domestic assault with a dangerous weapon statute, Okla. Stat. tit. 21, § 644(D)(1), with which state authorities charged him before all state charges were dismissed in favor of the instant federal indictments. Under that statute:

6

"We review the factual findings underlying a district court's sentencing determination for clear error and review the underlying legal conclusions *de novo*." *Marrufo*, 661 F.3d at 1206 (quotation marks omitted). Because Mr. Richards challenges the district court's factual findings—arguing that "the district court erred in relying on impeached hearsay testimony"—he can prevail on appeal only if he establishes that the district court clearly erred. *See* Opening Br. at 17.

"Under clear error review, we view the evidence and inferences drawn therefrom in the light most favorable to the district court's determination." *United States v. Porter*, 928 F.3d 947, 962 (10th Cir. 2019) (internal quotation marks omitted). To be clearly erroneous, "a finding must be more than possibly or even probably wrong; the error must be pellucid to any objective observer." *United States v. Cardenas-Alatorre*, 485 F.3d 1111, 1119 (10th Cir. 2007) (quotation marks omitted). "[W]e must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *Porter*, 928 F.3d at 962–63 (quotation marks omitted). "And this deferential standard of review applies

> Any person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault . . . upon . . . a person who formerly lived in the same household as the defendant . . . with any sharp or dangerous weapon . . . is guilty of domestic assault . . . with a dangerous weapon which shall be a felony.

Okla. Stat. tit. 21, § 644(D)(1). Mr. Richards does not dispute that if the district court permissibly found that he pointed the firearm at Ms. Perry, he is properly found to have committed this offense for purposes of the enhancement.

equally regardless of whether the district court's factual findings are based on credibility determinations or on documentary evidence." *United States v. Hargrove*, 911 F.3d 1306, 1325 (10th Cir. 2019) (internal quotation marks omitted).

Mr. Richards's sole argument on appeal is that the impeachment evidence provided by Mr. Reyna and through the furniture rental agreements rendered impermissible the district court's reliance on Sergeant Papera's account of hearsay[3] statements attributed to Ms. Perry and her children.

## 1.     Mr. Reyna's Testimony

As described above, Mr. Reyna testified that Ms. Perry told him her children had not observed Mr. Richards point the firearm at her. Because Sergeant Papera testified that Ms. Perry had related the opposite to him, a factfinder could permissibly conclude that Mr. Reyna's testimony (1) calls into question Ms. Perry's credibility generally, and/or (2) creates an evidentiary conflict as to whether or not the children observed the event. The district court ultimately resolved both matters against Mr. Richards, explaining that "while the evidence as to the hearsay statement of the

---

[3] "[H]earsay statements may be considered at sentencing if they bear some minimal indicia of reliability." *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013) (quotation marks omitted). Mr. Richards does not argue that the hearsay statements supporting the enhancement did not bear minimal indicia of reliability, and we have affirmed the application of this same sentencing enhancement on substantially similar hearsay evidence as that supporting Mr. Richards's. *See United States v. Farnsworth*, 92 F.3d 1001, 1010 (10th Cir. 1996) (deeming reliable a hearsay statement made by victim to police that defendant threatened her with a firearm where statement was made contemporaneously with the incident and the defendant had an opportunity to cross-examine the officer who recounted the hearsay).

victim is certainly less than ironclad, it's not so noncredible as to cause me to discount it entirely." Tr. at 24.

To be sure, Mr. Richards has provided evidence from which the district court could have discounted Ms. Perry's statement to Sergeant Papera and generally questioned her credibility. But nothing in the evidence would require the district court to do so. As a result, Mr. Richards has failed to establish that the district court's decision was clearly erroneous. Absent such a showing, we will not disturb a factfinder's evidentiary and credibility determinations. *See United States v. A.S.*, 939 F.3d 1063, 1081 (10th Cir. 2019) ("Where conflicting evidence exists, we do not question the [factfinder's] conclusions regarding the credibility of witnesses or the relative weight of evidence." (quoting *United States v. Cope*, 676 F.3d 1219, 1255 (10th Cir. 2012) (alteration in original)); *United States v. Sweargin*, 935 F.3d 1116, 1123 (10th Cir. 2019) ("We have long held that the credibility of a witness at sentencing is for the sentencing court, who is the trier of fact, to analyze." (internal quotation marks omitted)). Because Mr. Richards has adduced nothing that renders the district court's resolution of these matters clearly erroneous, we will not disturb its findings on appeal.

As the district court noted, even if Mr. Richards is correct that the children did not witness Mr. Richards pointing the firearm at Ms. Perry, that fact does not preclude a finding that the assault occurred. Ms. Perry did *not* tell Mr. Reyna that Mr. Richards did not point a gun at her; she stated only that she believed her children did not observe the incident. Thus, the district court was free to credit Ms. Perry's

9

unrebutted statement to police that Mr. Richards pointed the weapon at her—committing a domestic assault.

Nor did Mr. Reyna's testimony impeach the credibility of Ms. Perry's children, each of whom separately told Sergeant Papera—outside Ms. Perry's presence—that they observed Mr. Richards point the firearm at their mother. Importantly, there was no evidence received about the source of Ms. Perry's belief that her children had not witnessed the incident (and therefore nothing to establish a foundation for her statement to that effect). And Mr. Reyna admitted he did not speak to the children. Thus, the district court would have acted well within its discretion if it credited the children's contemporaneous statements to Sergeant Papera about matters they personally perceived.

## 2.     Furniture Rental Agreements Evidence

Next, Mr. Richards points to the furniture rental agreements that list his address as Ms. Perry's in March of 2016. Mr. Richards introduced the agreements to prove he was still living with Ms. Perry in September of 2016, and thereby rebut the government's assertion that he had burglarized her home. Having succeeded in thwarting a burglary finding below, Mr. Richards argues on appeal that because Ms. Perry told police he moved out of her home in February of 2016, the March 2016 furniture rental agreements "alone demonstrate[] the unreliable nature of Ms. Perry's hearsay statements." Opening Br. at 16. But the record is devoid of evidence suggesting, and Mr. Richards never affirmatively states, that he was residing in Ms. Perry's home at the time of the September 2016 incident.

10

Thus, the most damaging inference from the rental agreements is that Ms. Perry's recollection about when Mr. Richards moved out of her home was inaccurate. And even if we assume she intentionally misrepresented that information, the district court remained free to credit her statement that Mr. Richards pointed the firearm at her. Stated differently, the impeachment evidence is not so powerful that the district court's decision to credit other of Ms. Perry's statements was clearly erroneous. At minimum, we cannot say the error would be "pellucid to any objective observer." *See Cardenas-Alatorre*, 485 F.3d at 1119 (quotation marks omitted).

In sum, Mr. Richards has not demonstrated clear error in the district court's factfinding. As a result, his four-level enhancement under § 2K2.1(b)(6)(B) must be sustained.

### B. Mr. Richards's Substantive Reasonableness Challenge

"In considering a substantive-reasonableness challenge, we presume that the sentence was reasonable if it fell within the applicable guideline range." *United States v. Ibanez*, 893 F.3d 1218, 1219 (10th Cir. 2018). "This is a deferential standard that either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in [18 U.S.C.] § 3553(a)." *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). "[I]mportantly, both the Supreme Court and this court have made clear that it is not the job of an appellate court to review de novo the balance struck by a district court among the factors set out in § 3553(a)." *United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008); *see United States v. Vasquez-Alcarez*, 647 F.3d 973, 978 (10th Cir.

11

2011) ("Our role is not to second guess the district court's treatment of the § 3553(a) factors.").

"We review the substantive reasonableness of a sentence for abuse of discretion." *United States v. Durham*, 902 F.3d 1180, 1236 (10th Cir. 2018) (internal quotation marks omitted). We will not find this standard met "unless the sentence is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (internal quotation marks omitted). Thus, "we will defer to the district court's judgment so long as it falls within the realm of . . . rationally available choices." *Id.* (alteration in original) (quotation marks omitted).

Because Mr. Richards's 94-month sentence is within his properly computed Guidelines range of 77–96 months, he bears the burden of rebutting the presumption that his sentence is substantively reasonable. In attempting to carry that burden, Mr. Richards submits two arguments.

First, he suggests that "[t]he district court did not properly allocate weight to [his] childhood, employment history, mental health issues, self-reporting to address those issues, support from the community, and role as a father to his children." Opening Br. at 21 With the exception of Mr. Richards's employment history, the district court explicitly weighed each of these matters. Indeed, in analyzing the § 3553(a) factors, the district court considered: (1) Mr. Richards's "particularly difficult childhood in terms of the circumstances with both his mother and his father" (Tr. at 46); (2) Mr. Richards's "mental health-related issues" (Tr. at 45); (3) that Mr. Richards self-reported to a mental health facility for treatment without "being

12

forced to do it by the criminal justice system or anybody else" (Tr. at 46); (4) the letters of support from individuals "from his church and others who've talked in terms of his potential" (Tr. at 45); and (5) that Mr. Richards "has been very much involved in the lives of his kids"[4] (Tr. at 46–47). Because he cannot argue that the district court failed to consider these matters, Mr. Richards argues the court should have accorded them greater weight and in turn should have imposed a lesser sentence. But Mr. Richards has not established that the district court abused its discretion, and absent that showing, we will "not . . . second guess the district court's treatment of the § 3553(a) factors." *Vasquez-Alcarez*, 647 F.3d at 978.

To the extent Mr. Richards assigns error to the district court's failure to explicitly rely on his employment history, we reject that argument. A district court "need not rely on every single factor—no algorithm exists that instructs the district judge how to combine the factors or what weight to put on each one." *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018). And at least in the four years preceding his sentencing (as far back as the PSR goes), Mr. Richards did not maintain anything approaching steady employment. In no year did he earn more than $7,280, and he was terminated for cause from three jobs between 2016 and 2018.

---

[4] The district court accorded less weight to Mr. Richards's familial support, remarking that "that activity [*i.e.*, his involvement in the lives of his children], laudable as it is, has undoubtedly occurred during much of the same period of time this course of violent conduct and so on that I've talked about has also continued." Tr. at 47. The district court continued: "So much as I hate to impose a sentence that necessarily removes the defendant from their family and from their kids for an extended period of time, it does seem to me that a meaningful sentence is appropriate here." Tr. at 47.

13

Thus, to the extent Mr. Richards asserts he should have received a lesser sentence because each additional month incarcerated is another month preventing his return to stable employment, there is scant evidence for that proposition.

Second, Mr. Richards argues that the district court relied heavily on its finding that he pointed the firearm at Ms. Perry. Reasserting the arguments he leveled against that factual finding, Mr. Richards contends that the district court's reliance on a clearly erroneous fact in weighing the § 3553(a) factors was an abuse of discretion. But if we agreed with Mr. Richards that the district court's factual finding was unsupported, he would be entitled to a remand for resentencing under a lower Guidelines range, obviating any consideration of whether his sentence was substantively reasonable. *See United States v. Fennell*, 65 F.3d 812, 813–14 (10th Cir. 1995) (remanding for resentencing after finding sentencing enhancement factually unsupported). As discussed above, however, the district court did not clearly err in finding that Mr. Richards used a firearm in connection with a domestic assault.

Next, Mr. Richards argues that even if the district court's factual finding is sustained, "his sentence is substantively unreasonable because the district court allocated undue weight upon this individual factor." Opening Br. at 21 As indicated above, we do not reweigh the § 3553(a) factors and substitute our judgment for that of the sentencing court. And although the district court relied on its finding that Mr. Richards pointed a loaded, cocked gun at Ms. Perry—"[a]nd because of that, it puts this in a more serious circumstance than would be the case if this was just a

14

matter of somebody passively possessing a weapon" (Tr. at 43)—the court appears to have been more troubled that this incident represented yet another entry in Mr. Richards's "history of violence." Tr. at 47. For example, the district court remarked that its review of Mr. Richards's criminal history revealed that "in a significant number of [the offenses] the indications are that they involved some kind of violence in the commission of them."[5] Tr. at 44. The district court further noted that the October 2017 incident at the apartment complex was "also obviously not a situation of passive possession" of a firearm. Tr. at 43.

Far from abusing its discretion, our review of the record suggests the district court conducted a thorough and thoughtful § 3553(a) analysis. The district court's reasoning demonstrates that it carefully reviewed all of the materials submitted in connection with the relevant factors, and struck a permissible balance in arriving at a 94-month, within-Guidelines sentence.

### III.   CONCLUSION

Mr. Richards has not demonstrated any clearly erroneous factual determinations underlying his sentencing enhancement, and he has not rebutted the presumption that his within-Guidelines sentence is substantively reasonable. As a result, the district court is **AFFIRMED**.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[5] Along with several other violent offenses, the PSR reports three prior incidents of domestic violence.

15